UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CRESCENT TOWING & SALVAGE CO., INC. and COOPER/T.SMITH MOORING CO., INC.<br><br>v.<br><br>M/V JALMA TOPIC, her engines, tackle, equipment, furniture, appurtenances, etc., *in rem*; | CIVIL ACTION NO. 2:21-cv-01331<br><br>SECTION __ \| DIVISION __<br><br>JUDGE<br><br>MAGISTRATE |

**<u>VERIFIED COMPLAINT</u>**

The Complaint of Plaintiffs, Crescent Towing & Salvage Co., Inc. ("Crescent") and Cooper/T. Smith Mooring Co., Inc. ("CTS"), against Defendant, M/V JALMA TOPIC, her engines, tackle, equipment, furniture, appurtenances, etc., *in rem,* in a cause of allision, civil and maritime, under Rule C of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, avers as follows:

1.

At all times hereinafter, Plaintiff, Crescent, was and is now a corporation organized under the laws of the State of Louisiana and with its principal place of business in the state of Louisiana.

2.

At all times hereinafter, Plaintiff, CTS, was and is now a corporation organized under the laws of the State of Louisiana and with its principal place of business in the state of Louisiana.

3.

At all times hereinafter, Defendant, M/V JALMA TOPIC (the "Vessel"), was and is now a bulk carrier bearing IMO No. 9309655 with an overall length of approximately 183 meters and

a breadth of approximately 32 meters, flying under the flag of Liberia.  The Vessel is currently within the Eastern District of Louisiana.

4.

Crescent is the owner of a barge office facility located on the right descending bank of the Lower Mississippi River at or near Mile Marker 93 AHP.  The barge office facility consists of multiple barges including some permanently moored via mooring cells and connected to the shore and each other via gangways with electrical shore power.  Crescent utilizes the barge office facility for several purposes, including but not limited to, office space for shoreside personnel, a dispatch office, training rooms for crews, storage for tug equipment and supplies, a staging area for crew change, a mooring place for vessels undergoing minor repairs, and a commissary.

5.

CTS also utilizes the barge office facility for several purposes, including but not limited to, office space and a mooring place for boats used in by mooring crews in their daily work.

6.

This is a claim, *in rem*, under the maritime jurisdiction of the United States of America and this Honorable Court in accordance with 28 U.S.C. §1333, Rule 9(h) of the Federal Rules of Civil Procedure, and Rule C of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions.

7.

On or about the early morning of July 12, 2021, the Vessel was headed upriver towards Algiers Point when it lost control, lost steering, and/or lost engine power causing it to allide with Crescent's barge office facility and other property at or near the barge office facility owned by Crescent or CTS.

8.

As a result of the Vessel's allision with Crescent's barge office facility, Crescent sustained and continues to sustain substantial damages, including but not limited to property damage to barges, barge mooring equipment, and barge mooring piles, property damage to the office building, electrical utilities, and other facilities located on the barges, property damage to the gangways connecting the barges to the shore and each other, property damage to equipment, contents, and supplies located within the office building and other buildings, interruption of its normal business operation, extra costs, lost revenue/profit, loss of use of its barge office facility, repair costs, survey expenses, tug services, debris removal, pollution abatement, towage, drydocking, other incidental costs and expenses in stabilizing the barge office facility and cleaning the wreckage, and other expenses and costs necessitated by the subject allision.  Further, some of Crescent's employees may have suffered personal injury as a result of the allision, potentially exposing Crescent to claims for personal injury and requiring Crescent to pay maintenance and cure and/or state and/or federal workers' compensation benefits. Crescent seeks recovery of its damages and potential maintenance and cure and/or benefits paid to its injured employees, as well as contribution and indemnity from the Vessel for any and all claims asserted against Crescent that arise out of the subject allision.

9.

As a result of the Vessel's allision with Crescent's barge office facility, CTS sustained and continues to sustain substantial damages, including but not limited to property damage to its workboats, property damage to its barge, property damage to equipment, contents and supplies located within the barge office facility and other buildings, interruption of its normal business operation, extra costs, lost revenue/profit, loss of use of its offices, repair costs, survey expenses,

and other expenses and costs necessitated by the subject allision. Further, some of CTS's employees may have suffered personal injury as a result of the allision, potentially exposing CTS to claims for personal injury and requiring Crescent to pay Longshore and Harbor Workers' Compensation Act benefits and/or state workers' compensation benefits. CTS seeks recovery of its damages and potential benefits paid to its injured employees, as well as contribution and indemnity from the Vessel for any and all claims asserted against CTS that arise out of the subject allision.

10.

The allision with Crescent's barge office facility herein described and all losses and damages resulting therefrom were in no way caused or contributed by any fault, negligence, or want of care on the part of Crescent or CTS or anyone for whose acts Crescent or CTS may be responsible, but on the contrary, the allision and resulting damage were caused solely by the fault and neglect of the Vessel and/or its master and crew's, owners', operators', managers, and/or owners *pro hac vice's*, negligence, unseaworthiness, improper navigation, violation of inland navigation rules and/or local navigation customs or usage, failure to man the Vessel with a competent crew, lack of due care, lack of skill, lack of training, lack of attention, failure to maintain a proper lookout within meaning of the inland navigation rules, failure of or failure to maintain the Vessel's propulsion system, failure of or failure to maintain the Vessel's steering system, failure of or failure to maintain the Vessel's navigation aids, and/or other failures, acts, or omissions of the Vessel and/or its master and crew, owners, operators, managers, and/or owners *pro hac vice*.

11.

In addition to the damages suffered and continued to be suffered by Crescent and CTS as outlined above, Crescent also provided emergency assist tug service to the Vessel after the allision.

12.

Considering the significant damages to property and businesses of Crescent and CTS caused by the allision, the potential injuries to their employees, and the emergency tug service provided by Crescent to the Vessel after the allision, all of which are estimated to amount to approximately $15,000,000. Crescent and CTS have maritime tort liens against the Vessel and rights to enforce their maritime liens against the Vessel to recover all damages they sustained or continue to sustain, all services rendered to the Vessel, and for all other such legal or equitable relief as is just and due under admiralty and maritime jurisdiction.

WHEREFORE, Plaintiffs, Crescent and CTS pray that:

1. A copy of the Verified Complaint be served upon the Vessel, *in rem*;

2. All persons claiming any right, title, or interest in the Vessel her engines, boilers, tackle, appurtenances, etc., be summoned to appear, file their claim, as owner, and to answer under oath all and singular the matters aforesaid, and that after due proceedings, said Vessel be condemned and sold to pay the demands aforesaid, with interest costs, and disbursements;

3. That the Court recognize maritime liens against the Vessel, *in rem*, in favor of Crescent and CTS in the amount of all damages sustained by Crescent and CTS due to the allision and its effects and the services provided to the Vessel by Crescent;

4. That a Warrant of Arrest be issued calling for the Vessel to be seized to satisfy Plaintiffs' claim; and

5. That Judgment be entered in favor of Crescent and CTS against the Vessel, *in rem*, in the amount of all damages sustained by Crescent and CTS due to the allision and its effects and the services rendered to the Vessel by Crescent, together with all

other amounts shown at trial including, but not limited to, interest and attorney's fees, and that this Judgment be recognized as a priority claim so that it is paid in preference and priority to all other claims of liens including any ship mortgage(s).

Respectfully submitted:

SALLEY, HITE, MERCER & RESOR, LLC

*/s/Kevin M. Frey*
DAVID M. FLOTTE, T.A. (#1364)
MARCELLE P. MOULEDOUX (#30339)
KEVIN M. FREY (#35133)
AUSTIN S. GLASCOE (#38236)
MORGAN E. KELLEY (#38299)
365 Canal Street, Suite 1710
New Orleans, LA 70130
Tel.:   (504) 566-8800
Fax:   (504) 566-8828
dflotte@shrmlaw.com
mmouledoux@shrmlaw.com
kfrey@shmrlaw.com
aglascoe@shmrlaw.com
mkelley@shmrlaw.com

*Counsel for Crescent Towing and Salvage Co. Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2021, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all persons electronically noticed.

*/s/ Kevin Frey*
KEVIN M. FREY