## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CRESCENT TOWING & SALVAGE CO., INC., ET AL.,** **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO.  21-1331** **c/w  21-1390** |
| **M/V JALMA TOPIC,** **Defendant** | **SECTION: "E" (4)** |

*Applies to:  21-1390*

## <u>ORDER AND REASONS</u>

Before the Court is Limitation Petitioners Lotina Navigation Company and Marfin Management S.A.M.'s (collectively "Petitioners") Motion for Jurisdictional Discovery.[1] Third-party Defendant YDK Technologies ("Defendant" or "YDK") opposes the motion.[2] On October 11, 2022, the Court ordered Defendant to file a supplemental memorandum stating whether it conceded it is subject to jurisdiction in any state's court of general jurisdiction, pursuant to Federal Rule of Civil Procedure 4(k)(2).[3] In its supplemental memorandum, Defendant stated that it was not subject to jurisdiction in any state in the United States.[4] For the reasons that follow, Petitioners' motion is **GRANTED** in part and **DENIED** in part.

## <u>BACKGROUND</u>

This case arises from the July 12, 2021, allision involving the M/V JALMA TOPIC.[5] On that day, the M/V JALMA TOPIC was traveling up the Mississippi River near New

---

[1] R. Doc. 65.
[2] R. Doc. 69.
[3] R. Doc. 84.
[4] R. Doc. 85.
[5] R. Doc. 62 at p. 3.

Orleans when its rudder stuck to port, causing it to allide with a barge and dock structure owned by Crescent Towing & Salvage Co. ("Crescent"), along with several small boats owned by Cooper/T. Smith Mooring Co. ("Cooper"), situated on the west bank of the river.[6]  On July 13, 2021, Crescent and Cooper filed the present action against the M/V JALMA TOPIC *in rem* pursuant to Supplemental Admiralty Rule C arrest.[7]

On July 22, 2021, Lotina Navigation Co. and Marfin Management S.A.M., the owner and managing owner of the M/V JALMA TOPIC, filed a verified complaint in limitation pursuant to Supplemental Admiralty Rule F in Case No. 21-1390.[8]  On July 28, 2021, the Court approved Petitioners' stipulation for value, directed issuance of notice to claimants, and stayed all actions against the Petitioners or the M/V/ Jalma Topic.[9] The Court set the deadline for potential claimants to file claims against the vessel as October 25, 2021.[10]  After the October 25, 2021, deadline had passed, the Court entered a default against any claimants who had not timely filed claims in this action.[11]  On October 25, 2021, Case No. 21-1390 was consolidated with Case No, 21-1331, the present action.[12]

Subsequently, on December 16, 2021, Petitioners filed a Third Party Complaint and Rule 14(c) Tender against YDK Technologies, the manufacturer of the M/V JALMA TOPIC's autopilot system ("the autopilot system"), which Petitioners allege was defective.[13] On July 5, 2022, Third Party Defendant YDK Technologies ("Defendant") filed a motion to dismiss for lack of personal jurisdiction.[14]  On July 12, 2022, Petitioners

---

[6] *Id.*
[7] R. Doc. 1.
[8] R. Doc. 1 (21-1390).
[9] R. Doc. 7 (21-1390)
[10] R. Doc. 21.
[11] *Id.*
[12] R. Doc. 19; R. Doc. 15 (21-1390).
[13] R. Doc. 42.
[14] R. Doc. 53.

sought leave to file an Amended Third Party Complaint,[15] which was granted on July 13, 2021.[16] Petitioners filed an Amended Third Party Complaint on July 19, 2022.[17] On July 25, 2022, Petitioners filed the instant motion seeking jurisdictional discovery concerning YDK's contacts with Louisiana and the United States.[18] Defendant filed an opposition on August 1, 2022.[19] On August 24, 2022, following a relevant Fifth Circuit decision, Defendant sought and was granted leave to file a supplemental memorandum in opposition on August 24, 2022.[20] At the request of the Court, Petitioners responded with a supplemental memorandum in support on August 26, 2022, including the specific details of its requested jurisdictional discovery.[21] Defendant responded on September 2, 2022.[22]

## LEGAL STANDARD

### I.   Jurisdictional Discovery Standard

A district court may allow the parties to conduct discovery to ascertain facts relevant to determining personal jurisdiction.[23] "When the defendant disputes the factual bases for jurisdiction, the court may receive interrogatories, depositions, or any combination of the recognized methods of discovery to help it resolve the jurisdictional issue," and the court "has discretion as to the type and amount of discovery to allow."[24]

---

[15] R. Doc. 59.
[16] R. Doc. 60.
[17] R. Doc. 62.
[18] R. Doc. 65.
[19] R. Doc. 69.
[20] R. Doc. 73.
[21] R. Doc. 78.
[22] R. Doc. 80.
[23] *Nat'l Union Fire Ins. Co. of Pittsburgh, v. Smith Tank & Steel, Inc.*, No. 11-3054, 2012 WL 13001041, at *3 (E.D. La. Oct. 25, 2012) ("[I]t is well settled that a court may allow discovery in order to allow the parties to ascertain facts that are relevant in determining personal jurisdiction.") (quoting *Blessey Marine Servs., Inc. v. Jeffboat,* LLC, 2011 WL 651999, at *5 (E.D. La. 2011)).
[24] *Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (internal quotation marks and citation omitted).

"[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous."[25] To support a request for jurisdictional discovery, a plaintiff must make a "preliminary showing of jurisdiction."[26] A preliminary showing of jurisdiction is required whether a plaintiff alleges a theory of specific or general personal jurisdiction.[27] "A preliminary showing is less than a prima facie showing; if the plaintiff made a prima facie showing, jurisdictional discovery would be unnecessary."[28] A preliminary showing requires "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts."[29] "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained."[30] However, "[w]hen the lack of personal jurisdiction is clear, discovery would serve no purpose" since it cannot "add[] any significant facts"; thus, jurisdictional discovery "should not be permitted."[31]

District courts are given broad discretion in all discovery matters.[32] The party opposing dismissal based on the lack of jurisdiction bears the burden of demonstrating

---

[25] *ING Bank N.V. v. M/V Portland, IMO No. 9497854*, No. 3:15-cv-00805-JWD-RLB, 2016 WL 3365426, at *8 (M.D. La. June 16, 2016) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)).

[26] *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005).

[27] *See id.* (citing *Toys "R" Us,* 318 F.3d at 456) (applying the jurisdictional discovery standard in a general jurisdiction context, and relying on Third Circuit precedent, *Toys "R"* Us, which applied the same standard in the specific personal jurisdiction context); *see also Quintel Tech. Ltd. v. Huawei Tech. USA, Inc.*, No. 4:15-cv-307, 2016 WL 5423178, at *2 (E.D. Tex. Sept. 27, 2016) (applying *Fielding* in the specific personal jurisdiction context).

[28] *Quintel*, No. 4:15-cv-307, 2016 WL 5423178, at *2.

[29] *Fielding*, 415 F.3d at 429.

[30] *Id.* (quoting *Toys "R" Us*, 318 F.3d at 456).

[31] *Bonner v. Triple-S Management Corp.*, 661 F. App'x 820, 822 (5th Cir. 2016) (quoting *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982)).

[32] *Id.* at 821.

the need for jurisdictional discovery by making a preliminary showing of personal jurisdiction.[33]

## II.     Personal Jurisdiction Standard

A review of the personal jurisdiction standard is necessary to determine whether Plaintiff has made a preliminary showing by presenting factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts.

The Due Process Clause of the Fourteenth Amendment "operates to limit the power of a State to assert *in personam* jurisdiction over a nonresident defendant."[34] For a court's exercise of personal jurisdiction over a non-resident defendant to be constitutional under the Due Process Clause, (1) "that defendant [must have] purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state"; and (2) "the exercise of jurisdiction over that defendant [must] not offend 'traditional notions of fair play and substantial justice.'"[35]

Satisfaction of the "minimum contacts" test depends on the type of jurisdiction the court seeks to exercise over the defendant: general jurisdiction or specific jurisdiction.

### A.     General Jurisdiction

A court may exercise general jurisdiction over a non-resident defendant when that defendant's contacts with the forum state are "continuous and systematic," regardless of whether such contacts are related to the plaintiff's cause of action. Stated differently, "[g]eneral jurisdiction will attach, even if the act or transaction sued upon is unrelated to the defendant's contacts with the forum state, if the defendant has engaged in 'continuous

---

[33] *Monkton Ins. Serv. Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014).
[34] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984)).
[35] *Eddy v. Printers House (P) Ltd.*, 627 F. App'x. 323, 326 (5th Cir. 2015) (quoting *Alpine View Co. v. Atlas Capco AB*, 205 F.3d 208, 215 (5th Cir. 2000)).

and systematic' activities in the forum state."[36] In *Goodyear Dunlop Tires Operations, S.A. v. Brown*, the Supreme Court stated that, "for an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation it is an equivalent place, one in which the corporation is fairly regarded as at home."[37] That is, the corporation must have substantial, continuous, and systematic contacts with the forum state so as to "render [it] essentially at home in the forum state."[38] "It is, therefore, incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."[39]

### B.    Specific Jurisdiction

When the defendant's contacts are less pervasive, a court may exercise specific jurisdiction over a non-resident defendant in a suit arising out of or related to the defendant's contacts with the forum. The Fifth Circuit has enunciated a three-factor analysis to guide courts in assessing the presence of specific personal jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[40]

To make a *prima facie* showing of specific personal jurisdiction, the plaintiff need only satisfy the first two factors.[41] If the plaintiff makes a *prima facie* showing, the burden of proof with respect to the reasonableness factor shifts to the defendant to "present a

---

[36] *721 Bourbon, Inc. v. House of Auth, LLC*, 140 F. Supp. 3d 586, 592 (E.D. La. 2015) (citations omitted).
[37] 564 U.S. 915, 924 (2011).
[38] *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).
[39] *Monkton*, 768 F.3d at 432 (citing *Daimler AG*, 134 S. Ct. at 760; *Helicopteros*, 466 U.S. at 411–12).
[40] *Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 319 (5th Cir. 2020) (quoting *Seiferth*, 472 F.3d at 271).
[41] *Athletic Training Innovations, LLC v. eTagz, Inc.*, 955 F. Supp. 2d 602, 613 (E.D. La. 2013); *see also 721 Bourbon*, 140 F. Supp. 3d at 592–93; *Autogenomics, Inc. v. Oxford Gene Tech.*, 566 F.3d 1012, 1018–19 (Fed. Cir. 2009).

compelling case that the presence of some other considerations would render jurisdiction unreasonable."[42]

### C.      Federal Rule of Civil Procedure 4(K)(2) Standard

To exercise personal jurisdiction over a non-resident defendant on the basis of Federal Rule of Civil Procedure Rule 4(k)(2), two requirements must be satisfied. First, the defendant must not be "subject to jurisdiction in any state's court of general jurisdiction."[43] Second, the exercise of jurisdiction must not exceed the boundaries of due process under the Fifth Amendment.[44] In other words, "[a]s this Court has previously noted, jurisdiction pursuant to Rule 4(k)(2) is proper where: (1) the claims against the defendant arise under federal law; (2) the defendant 'does not concede to jurisdiction in another state;' and (3) the defendant has sufficient ties to the United States as a whole to satisfy due process concerns.'"[45] When applying Rule 4(k)(2) in the context of general or specific personal jurisdiction, although the limits of due process are measured under the Fifth Amendment, the Fifth Circuit has affirmed courts are to adhere "to the same legal standard developed in the Fourteenth Amendment context—the 'now-familiar minimum contacts analysis'—but with one significant distinction."[46] "[W]here Rule 4(k)(2), and thus Fifth Amendment due process, is at issue, the Fifth Circuit looks to the sufficiency of a party's ties with the United States as a whole, rather than to the sufficiency of its ties

---

[42] *Athletic Training Innovations*, 955 F. Supp. 2d at 613.
[43] Fed. R. Civ. P 4(k)(2).
[44] *Patterson v. Blue Offshore BV*, No. 13-337, 2015 WL 4096581, at *9 (E.D. La. July 6, 2015).
[45] *Id.*
[46] *Id.*; *Douglass v. Nippon Yusen Kabushiki Kaisha*, No. 20-30379, 2022 U.S. App. LEXIS 22765, at *27 (5th Cir. Aug. 16, 2022) (affirming the panel decision decided under *Patterson*).

with any individual state, in order to determine whether the requisite showing of minimum contacts has been made."[47]

## **LAW AND ANALYSIS**

Petitioners bring two causes of action against YDK.[48] First, Petitioners allege YDK is strictly liable for its product that both had an unreasonably dangerous condition and was defective in design.[49] Second, Petitioners assert a failure to warn claim, alleging YDK had a duty to warn Petitioners of the product's dangerous condition.[50] In Petitioners' Amended Complaint, Petitioners allege YDK has various contacts with both Louisiana and the United States as a whole.[51] The Court has interpreted this as raising Rule 4(k)(2), under which the Court is to consider YDK's ties with the United States as a whole, rather YDK's ties with Louisiana, in its minimum contacts analyses.[52]

Petitioners argue this Court has personal jurisdiction over YDK under theories of general personal jurisdiction and specific personal jurisdiction. Petitioners argue this Court has general personal jurisdiction over YDK because Defendant regularly conducts business in the State of Louisiana; Defendant maintains continuous and systematic contacts in the state; and Defendant's activities in the state include marketing, advertising, promoting, distributing, and receiving substantial compensation and profits from sales and other acts.[53]

---

[47] *Id.* at *24 ("For federal claims filed in federal courts, of course, the relevant minimum contacts are those with the entire United States, not a forum state."); *Patterson*, No. 13-337, 2015 WL 4096581, at *9.
[48] R. Doc. 62 at pp. 6-7, 9-10.
[49] *Id.* at pp. 6-7.
[50] *Id.* at pp. 9-10.
[51] *See generally id.*
[52] *Douglass*, No. 20-30379, 2022 U.S. App. LEXIS 22765, at *24.
[53] R. Doc. 62 at p. 2.

Petitioners also argue this Court has specific personal jurisdiction over YDK because Defendant put its product into the stream of commerce, later causing injury in the United States, and because Defendant's authorized service technicians serviced the product in the United States, where they failed to warn Petitioners of the product's dangerous defect. Petitioners allege Defendant wholesales its products to AG Marine, Inc., which in turn distributes Defendant's products to most major port cities in the United States, including New Orleans.[54] Petitioners also allege YDK maintains authorized service technicians who operate exclusively on YDK products in the United States, and neither YDK nor its authorized technicians warned Petitioners of the autopilot system's alleged dangerous defect.[55] Accordingly, they move for jurisdictional discovery concerning YDK's contacts both with Louisiana and the United States as a whole.

To obtain jurisdictional discovery, Petitioners need not prove personal jurisdiction exists but must make a "preliminary showing of jurisdiction" by "presenting factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts."[56]

## I.   Petitioners Have Not Made a Preliminary Showing of General Jurisdiction.

First, the Court finds Petitioners failed to make a preliminary showing of general personal jurisdiction over YDK. As recognized by the parties in their supplemental memorandums,[57] the recent Fifth Circuit decision in *Douglass v. Nippon Yusen Kabushiki Kaisha* precludes the exercise of general personal jurisdiction in the instant

---

[54] *Id.* at p. 4.
[55] *Id.*
[56] *Fielding*, 415 F.3d at 429.
[57] R. Doc. 72-2 at p. 2; R. Doc. 76-1 at p. 1.

action.[58] In Petitioners' supplemental memorandum, Petitioners conclude "*Douglass* appears to curtail the availability of general jurisdiction over foreign defendants like YDK. However, general jurisdiction is the extent of the *Douglass* opinion."[59] After conceding this point, Petitioners do not further address the theory of general personal jurisdiction in their supplemental memorandum.[60] Accordingly, the Court construes Petitioners' statement and subsequent failure to argue the issue as a withdrawal of its general personal jurisdiction argument.

## II.   Specific Jurisdiction

Petitioners' amended complaint sets forth a strict products liability claim and a failure to warn claim against Defendant.[61] In the Fifth Circuit, "specific personal jurisdiction is a claim-specific inquiry: '[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.'"[62] Accordingly, for the purpose of assessing whether a preliminary showing of specific jurisdiction has been made, the Court will address each of Petitioners' claims in turn.

### A.   Petitioners Have Not Made a Preliminary Showing of Specific Personal Jurisdiction as to their Strict Products Liability Claim.

Petitioners have failed to make a preliminary showing of specific personal jurisdiction as to their products liability claim against YDK. Petitioners' amended complaint sets forth only a stream of commerce theory of personal jurisdiction as to their

---

[58] *Douglass*, No. 20-30379, 2022 U.S. App. LEXIS 22765, at *26.
[59] R. Doc. 76-1 at p. 1.
[60] *Id.* at pp. 1-3.
[61] R. Doc. 62 at pp. 6-7, 9-10.
[62] *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

products liability claim.[63] Petitioners allege this Court has personal jurisdiction over YDK because YDK manufactured the autopilot system and placed it into the stream of commerce, ultimately resulting in Petitioners' injury in New Orleans.[64]

"When a nonresident's contacts with the forum . . . 'stems from a product, sold or manufactured by a foreign defendant, which has caused harm in the forum . . . , the court has specific jurisdiction if it finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased or used by consumers in the forum."[65] However, [o]nce a product has reached the end of the stream of commerce and is purchased, a consumer's unilateral decision to take a product to a distant [forum], without more, is insufficient to confer personal jurisdiction over the manufacturer or distributor."[66] Put another way, "[i]n order to exercise specific personal jurisdiction over a defendant under a stream of commerce theory, the product at issue must have reached the forum . . . while still in the stream of commerce."[67]

YDK states, and Petitioners do not dispute, the autopilot system was manufactured in Japan and subsequently sold to a shipbuilding company which installed the system in the M/V JALMA TOPIC in the Philippines in 2006.[68] The autopilot system exited the stream of commerce in a foreign country well before the incident in question. Because the

---

[63] R. Doc. 62 at p. 4. Based on Petitioners' initial requests for discovery in their motion for jurisdictional discovery, it appears Petitioners set forth an alter ego theory of liability through AG Marine, attempting to obtain specific jurisdiction over YDK based on AG Marine's distribution of YDK's products around the United States. However, specific jurisdiction requires a plaintiff's claims to arise out of or result from the defendant's activities in the forum. Petitioners did not obtain the autopilot system through AG Marine. As a result, there is no connection between AG Marine's contacts in the United States and Petitioners' alleged harm. Accordingly, the Court need not address the merits of this theory of specific personal jurisdiction.
[64] *Id.*
[65] *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 585 (5th Cir. 2010) (quoting *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 380 (5th Cir. 2002)).
[66] *Seiferth*, 472 F.3d at 273.
[67] *Istre v. Montco Offshore, Inc., et al.*, No. 12-2054, 2016 U.S. Dist. LEXIS 36920, at *10 (E.D. La. Mar. 22, 2016).
[68] R. Doc. 53-2 at p. 1.

autopilot system did not reach the United States while still in the stream of commerce, Petitioners have failed to make a preliminary showing of specific personal jurisdiction as to the products liability claim. Accordingly, Petitioners' motion for jurisdictional discovery as to this claim must be denied.[69]

### B. Petitioners Have Made a Preliminary Showing of Specific Personal Jurisdiction as to their Failure to Warn Claim Under Fed. R. Civ. P. 4 and 4(K)(2).

Petitioners have made a preliminary showing of specific personal jurisdiction warranting jurisdictional discovery on their failure to warn claim. Petitioners allege Defendant is liable to them because Defendant knew of the autopilot system's defect, but both Defendant and its authorized service technicians in the United States failed to provide Petitioners with a warning that had been issued to inform purchasers of the defect.[70] Further, Petitioners allege the autopilot system "was serviced by YDK authorized technicians multiple times in the United States, including in New Orleans."[71] Because Petitioners have alleged contacts both with Louisiana and with the United States as a whole, the Court construes Petitioners' argument as a request for jurisdictional discovery as to both a traditional theory of specific personal jurisdiction and a specific personal jurisdiction theory under Rule 4(k)(2).

To exercise personal jurisdiction over a non-resident defendant on the basis of Federal Rule of Civil Procedure Rule 4(k)(2), (1) the defendant must not be "subject to

---

[69] It is clear to this Court that there is no basis for specific personal jurisdiction over Petitioners' products liability claim, considering the stream of commerce theory is foreclosed. However, Defendant's motion to dismiss this claim is not before the Court, as it has not been fully submitted. R. Doc. 53. Because Petitioners did not assert a failure to warn claim until their amended complaint, filed after Defendant's motion to dismiss, Defendant's motion is based solely on this products liability claim. Accordingly, Defendant's motion to dismiss is denied, without prejudice, to allow Defendant to refile a motion to dismiss as to the failure to warn claim currently alleged by Petitioners.
[70] R. Doc. 53-1 at p. 12.
[71] R. Doc. 76-1 at p. 2.

jurisdiction in any state's court of general jurisdiction,"[72] and (2) the exercise of jurisdiction must not exceed the boundaries of due process under the Fifth Amendment.[73] "[S]o long as a defendant does not concede to jurisdiction in any other state, a court may use Rule 4(k)(2) to confer jurisdiction.[74] On October 11, 2022, the Court ordered Defendant to file a supplemental memorandum stating whether it concedes it is subject to jurisdiction in any state's court of general jurisdiction, pursuant to Rule 4(k)(2).[75] In its supplemental memorandum, Defendant states that it is *not* subject to jurisdiction in any state's court of general jurisdiction.[76] Accordingly, the Court turns to the question of whether the exercise of jurisdiction exceeds the boundaries of due process, as set forth below.

Where Rule 4(K)(2) is at issue, the specific personal jurisdiction inquiry is the same, except that courts in "the Fifth Circuit look[] to the sufficiency of a party's ties with the United States as a whole, rather than the sufficiency of its ties with any individual state, in order to determine whether the requisite showing of minimum contacts has been made."[77] Said differently, when Rule 4(k)(2) is at issue, the Fifth Circuit's three-step analysis to determine specific jurisdiction is as follows: "(1) whether the defendant has minimum contacts with the [United States as a whole]; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts [with the United States]; and (3) whether the exercise of personal jurisdiction is fair and

---

[72] Fed. R. Civ. P 4(k)(2).

[73] *Patterson*, No. 13-337, 2015 WL 4096581, at *9.

[74] *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004).

[75] R. Doc. 84.

[76] R. Doc. 85.

[77] *Douglass*, No. 20-30379, 2022 U.S. App. LEXIS 22765, at *24; *Patterson*, No. 13-337, 2015 WL 4096581, at *9; *see also CGC Holding Co., LLC v. Hutchens*, 974 F.3d 1201, 1208-09 (10th Cir. 2020) (considering a defendant's contacts with the United States as a whole in its specific personal jurisdiction inquiry under 4(K)(2)).

reasonable."[78] At this stage, only a preliminary showing of specific jurisdiction is required to obtain jurisdictional discovery. A preliminary showing of personal jurisdiction requires "factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts."[79] "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained."[80]

In this case, Petitioners argue services rendered by YDK authorized service technicians on the vessel in the United States, including New Orleans, created the requisite contacts to convey specific jurisdiction over Defendant.[81] Petitioners allege YDK maintains authorized service technicians who operate exclusively on YDK products in the United States, and neither YDK nor its authorized technicians warned Petitioners of the autopilot system's alleged dangerous defect.[82] Petitioners have alleged a potential relationship between Defendant and its United States-based service technicians because Defendant relies on the technicians to inform vessel owners of defects.[83] Further, Petitioners allege YDK issued a notice concerning the exact autopilot system malfunction alleged to have caused the instant collision.[84] The notice "advised of a dangerous condition with the [autopilot system] that forces the rudder to maintain its current position where there is a steering malfunction . . . [and] provided steps for the user to take to restore steering control whenever the emergency alarm is issued."[85] Further,

---

[78] *Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 319 (5th Cir. 2020) (quoting *Seiferth*, 472 F.3d at 271).
[79] *Fielding*, 415 F.3d at 429.
[80] *Id.* (quoting *Toys "R" Us, Inc.*, 318 F.3d at 456).
[81] R. Doc. 76-1 at p. 2.
[82] R. Doc. 62 at p. 10.
[83] *Id.*
[84] *Id.*
[85] *Id.*

Petitioners allege YDK authorized service technicians serviced the autopilot system in 2016.[86] However, Petitioners allege "YDK failed to disseminate this warning to Petitioners either directly or through its network of distributors or authorized service agents, including . . . Radio Holland."[87] Petitioners' argument is supported by Fifth Circuit precedent, which suggests a service conducted in a forum during which a party failed to warn of a defect may be a sufficient minimum contact to confer specific personal jurisdiction over a defendant as to a plaintiff's failure to warn claim.[88]

Courts have found jurisdictional discovery especially appropriate when, as in this case, the opposing party relies on declarations, because declarations "are generally untested by cross-examination and uncorroborated by document product."[89] In this case, Defendant supports its underlying Motion to Dismiss by relying heavily on a declaration provided by its corporate director.[90]

The Court must not, at this stage, weigh the evidence presented by Petitioners as to the merits of their claim. Accepting Petitioners' allegations as true, Petitioners have presented factual allegations that suggest with reasonable particularity the possible existence of requisite contacts with Louisiana and the United States, and as a result, they have established a preliminary showing of specific personal jurisdiction sufficient to warrant jurisdictional discovery as to their failure to warn claim under Rule 4 and Rule

---

[86] *Id.*

[87] *Id.*

[88] *Seiferth*, 472 F.3d at 276.

[89] *Parus Holdings, Inc. v. Google LLC*, W-19-cv-00432-ADA, slip op., at 6 (W.D. Tex. Feb. 27, 2020) (stating that "the declarations that movants [of pre-discovery motions] provide often raise more questions than they answer," and are "particularly problematic" with pre-discovery motions "because they are generally untested by cross-examination and uncorroborated by document production"); *see also Trustees of Purdue Univ. v. STMicroelectronics N.V.*, No. 6:21-CV-727-ADA, 2022 WL 1242475, at *6 (W.D. Tex. Apr. 27, 2022).

[90] R. Doc. 53-2.

4(k)(2). Accordingly, the Court permits jurisdictional discovery limited to the failure to warn claim, as outlined below.

### C.   Limited Discovery Is Permitted as to Petitioners' Failure to Warn Claim.

Petitioners seek to take the deposition of Iwao Yamamoto, YDK's Director and the individual who submitted an affidavit in support of YDK's motion to dismiss.[91] Petitioners also seek to propound a set of interrogatories and a set of requests for production on YDK.[92] According to Petitioners, the requested discovery is designed to discover the extent of YDK's contacts with Louisiana and the United States, its relationship with its authorized service technicians and agents, and the manner in which it disseminated notices and warnings to end users of its autopilot systems in the United States.[93]

The Court finds the deposition of Mr. Yamamoto is not necessary at this stage. If Petitioners are unable to obtain the necessary information from the permitted discovery, Petitioners may, with good cause shown, seek leave of Court to depose Mr. Yamamoto.

The Court finds any interrogatories related to a theory of general personal jurisdiction, and therefore any interrogatories related to Defendant's relationship with its United States distributor, AG Marine, are irrelevant and will not be permitted. On this basis, the Court strikes Interrogatory No. 1.[94] However, Defendant must answer the remaining interrogatories.[95]

Finally, the Court finds Petitioners' set of requests for production[96] is overly broad and imposes too great a burden on Defendant at this stage. Defendant must produce only:

---

[91] *Id.*
[92] *Id.* at p. 3.
[93] *Id.*
[94] R. Doc. 76-2 at p. 3.
[95] R. Doc. 76-2.
[96] R. Doc. 76-3.

(1) documents from January 1, 2010, to July 13, 2021, referred to or providing support to Defendant's answers to Petitioners' interrogatories; (2) any agreements reflecting a relationship between YDK and authorized service agents in the United States and in Louisiana specifically in effect between January 1, 2010, and July 13, 2021; and (3) any documents related to services performed by YDK or its agents in the United States after December 24, 2014, and before July 13, 2021, including services on the M/V JALMA TOPIC.

## CONCLUSION

**IT IS ORDERED** that Petitioners' Motion for Extension of Time to Complete Jurisdictional Discovery and to Continue Submission of YDK's Motion to Dismiss[97] is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss[98] is **DENIED**, **without prejudice**.

**IT IS FURTHER ORDERED** that Petitioners' Motion for Jurisdictional Discovery as to its failure to warn claim is **GRANTED**. Defendant must answer Petitioners' first set of interrogatories, excluding Interrogatory No. 1, on or before **Monday, November 3, 2022**.

**IT IS FURTHER ORDERED** that Defendant must produce: (1) documents from January 1, 2010, to July 13, 2021, referred to or used in support of Defendant's answers to Petitioners' interrogatories; (2) any agreements reflecting a relationship between YDK and authorized service agents in the United States and in Louisiana specifically in effect

---

[97] R. Doc. 65.
[98] R. Doc. 53. Petitioners' only theory of personal jurisdiction asserted as to their products liability claim, a stream of commerce theory, is not available. The pending motion to dismiss seeks dismissal only of the products liability claim. The motion to dismiss is denied without prejudice to allow Defendant to refile a motion to dismiss with respect to Petitioners' failure to warn claim following jurisdictional discovery.

between January 1, 2010, and July 13, 2021; and (3) any documents related to services performed by YDK or its agents after December 24, 2014, and before July 13, 2021, including services on the M/V JALMA TOPIC, by **Monday, November 3, 2022**.

      **IT IS FURTHER ORDERED** that a status conference is set for **November 18, 2022, at 2:00 p.m.**, in the chambers of Judge Morgan.

      **New Orleans, Louisiana, this 13th day of October, 2022.**

                                                      **SUSIE MORGAN**
                                      **UNITED STATES DISTRICT JUDGE**