UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CRESCENT TOWING & SALVAGE CO., INC., ET AL.,**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-1331 c/w**<br>         **21-1390, 21-1953** |
| **M/V JALMA TOPIC,**<br>    **Defendant** | **SECTION: "E" (2)** |

*Applies to: 21-1390*

## ORDER AND REASONS

Before the Court is Third-Party Defendant YDK Technologies' ("YDK") second motion to dismiss for lack of personal jurisdiction.[1] Limitation Petitioners Lotina Navigation Company and Marfin Management S.A.M.'s (collectively "Petitioners") oppose the motion.[2] YDK filed a reply.[3] For the reasons that follow, YDK's motion to dismiss is **GRANTED**.

## BACKGROUND

This case arises from the July 12, 2021, allision involving the M/V JALMA TOPIC.[4] On that day, the M/V JALMA TOPIC was traveling up the Mississippi River near New Orleans when its rudder stuck to port, causing it to allide with a barge and dock structure owned by Crescent Towing & Salvage Co. ("Crescent"), along with several small boats

---

[1] R. Doc. 89. YDK filed a motion to dismiss on July 5, 2022. R. Doc. 53. In opposition, Petitioners filed a motion for extension of time to conduct jurisdictional discovery. R. Doc. 65. On October 13, 2022, the Court granted limited jurisdictional discovery and denied YDK's first motion to dismiss without prejudice. R. Doc. 86. After a period of time for jurisdictional discovery, YDK now re-asserts its motion to dismiss.
[2] R. Doc. 90.
[3] R. Doc. 97.
[4] R. Doc. 62 at p. 3.

1

owned by Cooper/T. Smith Mooring Co. ("Cooper"), situated on the west bank of the river.[5] On July 13, 2021, Crescent and Cooper filed the present action against the M/V JALMA TOPIC *in rem* pursuant to Supplemental Admiralty Rule C arrest.[6]

On July 22, 2021, Lotina Navigation Co. and Marfin Management S.A.M., the owner and managing owner of the M/V JALMA TOPIC, filed a verified complaint in limitation pursuant to Supplemental Admiralty Rule F in Case No. 21-1390.[7] On July 28, 2021, the Court approved Petitioners' stipulation for value, directed issuance of notice to claimants, and stayed all actions against the Petitioners or the M/V/ Jalma Topic.[8] The Court set the deadline for potential claimants to file claims against the vessel as October 25, 2021.[9] After the October 25, 2021, deadline had passed, the Court entered a default against any claimants who had not timely filed claims in this action.[10] On October 25, 2021, and November 1, 2021, Case Nos. 21-1390, 21-1331, and 21-1953 were consolidated into one proceeding.[11] Subsequently, on December 16, 2021, Petitioners filed a Third-Party Complaint and Rule 14(c) Tender against YDK, the manufacturer of the M/V JALMA TOPIC's autopilot system ("the autopilot system"), which Petitioners allege was defective.[12]

On July 5, 2022, YDK filed a motion to dismiss for lack of personal jurisdiction.[13] In response to YDK's motion to dismiss, Petitioners sought leave to file an amended complaint and requested jurisdictional discovery.[14] First, Petitioners sought leave to file

---

[5] *Id.*
[6] R. Doc. 1.
[7] R. Doc. 1 (21-1390).
[8] R. Doc. 7 (21-1390)
[9] R. Doc. 21.
[10] *Id.*
[11] R. Doc. 19; R. Doc. 15 (21-1390).
[12] R. Doc. 42.
[13] R. Doc. 53.
[14] R. Doc. 59; R. Doc. 65.

an Amended Third-Party Complaint,[15] which was granted on July 13, 2022,[16] and filed on July 19, 2022.[17]  In Petitioners' Amended Complaint, Petitioners assert two causes of action against YDK.[18] First, Petitioners allege YDK is strictly liable for its product that both had an unreasonably dangerous condition and was defective in design.[19] Second, Petitioners assert a failure to warn claim, alleging YDK violated its duty to warn Petitioners of the product's dangerous condition.[20]

Petitioners also filed a motion seeking jurisdictional discovery concerning YDK's contacts with Louisiana and the United States.[21] The Court, in its October 13, 2022 Order and Reasons, denied YDK's motion to dismiss without prejudice and granted the motion for jurisdictional discovery with respect to the failure to warn claim only.[22] Therein, the Court held it does not have general jurisdiction over YDK.[23] The Court also held it does not have specific jurisdiction over YDK with respect to Petitioners' products liability claim, which was asserted under a stream of commerce theory.[24] Because the Court's Order foreclosed Petitioner's theory of general jurisdiction over YDK on its failure to warn claim, Petitioners are left with only a theory of specific jurisdiction with respect to that claim. On December 2, 2022, after the period of jurisdictional discovery ended, YDK re-urged the instant motion to dismiss for lack of personal jurisdiction.[25]

---

[15] R. Doc. 59.
[16] R. Doc. 60.
[17] R. Doc. 62.
[18] *Id.* at pp. 6-7, 9-10.
[19] *Id.* at pp. 6-7.
[20] *Id.* at pp. 9-10.
[21] R. Doc. 65.
[22] R. Doc. 86.
[23] *Id.* at pp. 9-10.
[24] *Id.* at pp. 10-12.
[25] R. Doc. 89.

**LAW AND ANALYSIS**

I. **Personal jurisdiction over YDK cannot be based on Petitioners' failure to warn claim, in and of itself.**

The narrow body of case law on this issue convinces the Court that a failure to warn claim, in and of itself, does not establish that the Court has specific jurisdiction over a nonresident defendant. As articulated by YDK, there is little case law on this novel theory.[26] Most courts considering the issue have held the mere allegation of a failure to warn, without more, does not create the requisite contacts.[27] For example, in *Walsh v. National Seating Co., Inc.*, the United States District Court for the District of Massachusetts stated the following:

> Under certain circumstances, a failure to warn can constitute an omission sufficient to ground an action in tort. . . . "When the manufacturer learns or should learn of the risk created by its fault, it has a duty to take reasonable steps to warn at least the purchaser of the risk. One such reasonable step may be to warn at least the purchase of changes which eliminate or tend to eliminate the risk created by the manufacturer's initial fault." But this is not to say that . . . the mere allegation of a failure to warn is sufficient to ground jurisdiction under . . . the long-arm statute. . . . Since almost every products liability case has a potential issue of failure to warn, grounding jurisdiction solely on allegation[s] of such an omission might remove any limitation upon a state's assertion of personal jurisdiction and again be beyond "traditional notions of fair play and substantial justice."[28]

Likewise, adopting the holding in *Walsh*, the United States Court of Appeals for the Third Circuit in *Carty v. Beech Aircraft Corp.* reversed the lower court, finding "[i]n holding that jurisdiction can be sustained on the mere allegation that liability is predicated on

---

[26] R. Doc. 89-1 at p. 13.
[27] *Sulak v. Am. Eurocopter Corp.*, CV. 09-00135 DAE-KSC, 2009 WL 2849136, at *7 (holding the plaintiff could not "'transform a failure to act that was directed nowhere in particular to a purposeful availment of the laws of one specific state'" (quoting *Pettengill v. Curtis*, 584 F. Supp. 2d 348, 358-59 (D. Mass. 2008)); *Chlebda v. H.E. Fortna & Bro, Inc.*, 609 F.2d 1022, (1st Cir. 1979) (holding a plaintiff's claim that the defendant's omission occurred where the unwarned person resided was insufficient to confer personal jurisdiction over the defendant); *Fehl v. S. W. C. Corp.*, 433 F. Supp. 939 (D. De. 1977) (holding, under Delaware law, the plaintiff must demonstrate additional connections to the forum to satisfy the "arising out of" requirement for its failure to warn claim).
[28] *Walsh v. Nat'l Seating Co.*, 411 F. Supp. 564, 570 (1976).

4

failure to warn, the District Court improperly and unnecessarily confused the separate issues of personal jurisdiction and liability."[29] In *Carty*, the Third Circuit also relied on a United States Court of Appeals for the First Circuit decision, *Chlebda v. H. E. Fortna & Brother, Inc.* The *Carty* court stated:

> We note that in *Chleba*, . . . the First Circuit rejected a similar claim that jurisdiction could be predicated on the theory that the failure to warn "occurred where the unwarned person resided." Characterizing this contention as a "somewhat metaphysical" one, the court observed: "It is not to be forgotten that jurisdiction is power, and that originally jurisdiction in persona, required presence of the person. While power and presence have become largely symbolic, there must still be some form of submission to the [forum]. Here, the very complaint is that defendant did nothing."[30]

The sentiment expressed in each of the above cases is the same: an allegation that a manufacturer defendant failed to warn of a dangerous product, in and of itself, does not establish contacts with a forum sufficient to confer personal jurisdiction over that defendant.[31] According to these courts, to hold otherwise would be to render the personal jurisdiction requirement as to failure to warn claims nonexistent. The Court agrees with this reasoning.

Accordingly, the sole issue before the Court is whether Petitioners have demonstrated that YDK has contacts with the forum, other than the mere allegation of a

---

[29] *Id.*
[30] *Id.*
[31] The Court is further persuaded by the American Law of Products Liability treatise, which states the following:

> The failure to warn of a product defect does not constitute causing tortious injury by an act or omission in the forum state so as to support the exercise of personal jurisdiction over a nonresident defendant, because grounding jurisdiction solely on an allegation of a failure to warn might remove any limitation upon a state's assertion of personal jurisdiction and go beyond the traditional notions of fair play and substantial justice, since almost every products liability case has a potential issue of failure to warn.

Am. L. Prod. Liab. 3d § 48:65 (citing *Walsh*, 411 F. Supp. 564).

5

failure to warn claim, sufficient to allow this Court to exercise specific jurisdiction over YDK as to Petitioners' failure to warn claim.

**II.     The Fifth Circuit has articulated the legal standard to exercise specific personal jurisdiction over YDK as to Petitioners' failure to warn claim.**

A court may exercise specific jurisdiction over a non-resident defendant in a suit arising out of or related to the defendant's contacts with the forum. The Fifth Circuit has enunciated a three-factor analysis to guide courts in assessing the presence of specific personal jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.[32]

To make a *prima facie* showing of specific personal jurisdiction, the plaintiff need only satisfy the first two factors.[33] If the plaintiff makes a *prima facie* showing, the burden of proof with respect to the reasonableness factor shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[34]

**III.    The Court does not have specific personal jurisdiction over YDK with respect to Petitioners' failure to warn claim.**

Petitioners argue this Court has specific personal jurisdiction over YDK because the M/V JALMA TOPIC was serviced in Louisiana in 2016 by RadioHolland, a service

---

[32] *Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 319 (5th Cir. 2020) (quoting *Seiferth*, 472 F.3d at 271).
[33] *Athletic Training Innovations, LLC v. eTagz, Inc.*, 955 F. Supp. 2d 602, 613 (E.D. La. 2013); *see also 721 Bourbon*, 140 F. Supp. 3d at 592–93; *Autogenomics, Inc. v. Oxford Gene Tech.*, 566 F.3d 1012, 1018–19 (Fed. Cir. 2009).
[34] *Athletic Training Innovations*, 955 F. Supp. 2d at 613.

6

provider in AG Marine's Dealer Network.[35] In this case, Petitioners allege the cause of action arises out of the failure to warn Petitioners of a product defect in the PT500 autopilot system at the time of the service call. Accordingly, Petitioners argue the relevant contacts are those having to do with the 2016 service call, out of which Petitioners' failure to warn claim arises.

Petitioners do not allege that either YDK or YDK's representative, AG Marine, had any direct involvement in scheduling or conducting the 2016 service of the JALMA TOPIC. Petitioners allege the following facts:

> On February 3, 2016, the M/V JALMA TOPIC called to the Port of New Orleans, during which it received an annual service of its YDK PT500 autopilot system. The service was conducted by Radio Holland USA, which YDK acknowledges is part of its "REP" AG Marine's network of service providers. The service report for this attendance confirms that the annual service of the PT500 autopilot onboard the M/V JALMA TOPIC was completed. But the on-product warning label was not attached, nor was the important notice issued to Petitioners' through a service invoice.
> 
> During the July 12, 2021 incident in New Orleans, the PT500 Autopilot system on the M/V JALMA TOPIC displayed a SERVO LOOP alarm. This warning is the precise subject matter of YDK's Important Notice and on-product warning sticker. Because YDK failed to distribute the warning to the JALMA TOPIC advising of the actions to take if a SERVO LOOP alarm is received, the JALMA TOPIC crew was forced to respond to the incident without the information provided by the Important Notice and associated on-product warning label.
> 
> Thus, the facts show that: (1) YDK trained and certified service representatives in the United States and in New Orleans; (2) YDK created an Important Notice and on-product warning applicable to its product in 2014; (3) YDK relied on its certified technicians to distribute this warning; (4) YDK-certified technicians serviced the JALMA TOPIC in 2016; and (5) YDK-certified technicians failed to inform Petitioners' of the notice or attach the warning label to the JALMA TOPIC's autopilot on February 3, 2016 when conducting an annual service in New Orleans. Subsequently, on July 12, 2021, the exact malfunction for which YDK created the Important

---

[35] R. Doc. 90 at p. 6.

7

Notice and warning sticker occurred on the JALMA TOPIC, resulting in the claims that are the subject of this suit.[36]

It is undisputed that service calls of *other* vessels were received and completed by YDK through RadioHolland or other third-party technicians, but Petitioners do not allege that YDK or AG Marine were involved in the call for service of the M/V JALMA TOPIC. Nor do Petitioners allege they contacted YDK or AG Marine to arrange the service call. YDK denies having any record of such a call.[37] While it is true that RadioHolland is part of AG Marine's network of service providers,[38] it does not follow that every service call conducted by RadioHolland is at the behest of YDK and AG Marine.

Petitioners allege, without evidentiary support, that "YDK-certified technicians serviced the JALMA TOPIC in 2016."[39] YDK challenges this statement, stating "Petitioners did provide the February 3, 2016, service work ticket from Radio Holland for the 'annual service.' But, none of the information provided ties back to YDK."[40] YDK also responds that "[t]he signature of the technician is illegible, and it is not even alleged that the [specific technician who serviced the vessel in 2016] was certified by YDK."[41] This is not correct, as Petitioners do allege "YDK-certified technicians serviced the JALMA TOPIC in 2016," but Petitioners provide only this conclusory allegation with no evidentiary support.[42] While ordinarily the Court must accept Petitioners' allegations as true when considering a motion to dismiss, Petitioners' statement that the technician was certified by YDK is conclusory, without any support, and the Court is not required to credit

---

[36] *Id.* at pp. 6-7.
[37] R. Doc. 97 at p .2.
[38] R. Doc. 90 at p. 6.
[39] *Id.* at p. 7. Petitioners make a similarly conclusory statement in their amended complaint. R. Doc. 62 at p. 10.
[40] R. Doc. 97 at p. 3.
[41] *Id.*
[42] R. Doc. 90 at p. 7.

8

conclusory allegations. Accordingly, Petitioners have failed to demonstrate that YDK took any action at all related to the 2016 service call of the M/V JALMA TOPIC. The Court finds Petitioners have not made a prima facie case that YDK itself has sufficient contacts with the forum to exercise specific jurisdiction.

Instead, Petitioners seek to impute the actions of RadioHolland to YDK. Petitioners did not address the need to draw a connection between YDK and RadioHolland and apparently assumed the contacts would be imputed to YDK, without a deeper explanation of the basis for doing so. Giving Petitioners the benefit of the doubt, the Court construes this as an argument that the Court has personal jurisdiction over YDK based on the actions of its alleged agent, RadioHolland. Petitioners do not argue YDK directly authorized RadioHolland to act as its agent and, instead, at most suggest RadioHolland is the implied agent of YDK and RadioHolland's actions are imputable to YDK as the principal. If this is so, it is permissible that the actions of RadioHolland would create the minimum contacts necessary to confer specific jurisdiction over YDK. Therefore, the question before the Court is whether RadioHolland, in servicing a vessel in New Orleans based on a direct request to it, *i.e.*, not at the behest of YDK or AG Marine, is acting as YDK's implied agent such that RadioHolland's contacts may be imputed to YDK for the purpose of establishing specific personal jurisdiction over YDK.

"Agency relationships . . . may be relevant to the existence of *specific* jurisdiction."[43] It is well-settled in the Fifth Circuit that "[a]ctions by an agent can be used

---

[43] *Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014). The Fifth Circuit has clarified that, although *Daimler* foreclosed the use of jurisdiction-by-agency theories as to general jurisdiction, the United States Supreme Court left open—and even acknowledged—the relevance of such theories in the context of specific jurisdiction. *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 298 n.3 (5th Cir. 2020) (citing *id.*).

9

to establish jurisdiction over the principal."[44] "[A] corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there."[45] "In Louisiana law, an agency relationship can be created through express authorization or by an implied appointment arising from apparent authority."[46] Petitioners do not argue an express agency relationship was created between YDK and RadioHolland through express authorization.[47] Accordingly, the Court moves to the second alternative—that an agency relationship was created through implied agency.

"For an implied agency [relationship], 'the principal has the right to control the conduct of the agent and the agent has the authority to bind the principal.'"[48] To establish implied agency in this case, Petitioners must show: (1) that YDK, as principal, represented directly to Petitioners that the RadioHolland service technician was certified by YDK, and (2) that Petitioners reasonably relied on this representation when choosing RadioHolland.[49] First, Petitioners were required—and have failed—to demonstrate YDK, as principal, "made some representation or manifestation directly to" Petitioners.[50] When determining whether a representation has been made, the Court should consider "the words and conduct of the parties and the circumstances of the case."[51] Petitioners did not

---

[44] *Williamson v. Petrosakh Joint Stock Co. of the Closed Type*, 952 F. Supp. 495, 498 (S.D, Tex. 1997); *see also Daimler*, 571 U.S. at 135 n.13; *see also In re Chinese-Manufactured Drywall Products Liability Litigation*, 753 F.3d 521, 546 (5th Cir. 2014) ("In Louisiana, courts may impute contacts between two entities under either an alter-ego or agency theory.").

[45] *Daimler*, 571 U.S. at 135 n.13.

[46] *Admin. Of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 333 (5th Cir. 2011).

[47] *See id.* ("Though Plaintiffs make a bald assertion that Biomeasure was Ipsen's actual agent, they offer no evidence to support an express authorization for Biomeasure to act as Ipsen's agent with regard to the RFA or Licensing Agreement."); *Crescent City Marine*, 20 F.3d at 669 ("Since there was no evidence that Emerald was expressly appointed as an agent, the only issue is whether there was an implied appointment."). Even if Petitioners attempted to make this argument, it would fail, as Petitioners have not alleged facts sufficient to demonstrate YDK expressly appointed RadioHolland to act on its behalf.

[48] *In re Chinese Manufactured Drywall Prod. Liab. Lit.*, 894 F. Supp. 2d 819, 894-95 (E.D La. 2012).

[49] *See Admin. Of Tulane*, 450 F. App'x at 333 (citing *Crescent City Marine v. M/V Nunki*, 20 F.3d 665, 668 (5th Cir. 1994)).

[50] *Crescent City*, 20 F.3d at 669.

[51] *In re Chinese Manufactured Drywall*, 894 F. Supp. 2d at 895.

allege in their amended complaint or argue in their briefing that they communicated with YDK to schedule the 2016 service call. To the contrary, YDK denies having any record of a request for a service call from Petitioners, and Petitioners offer nothing to refute this.[52] Nor do Petitioners allege *any* communications with YDK occurred before the accident in question. Moreover, Petitioners do not allege that YDK communicated to them that YDK-certified technicians worked at RadioHolland. It is not clear whether Petitioners even knew that YDK had certified technicians to work on its products prior to the accident. There is no support for Petitioners' allegations that they relied on their reasonable belief that the RadioHolland technician was YDK-certified when they chose RadioHolland to service the M/V JALMA TOPIC. Petitioners have alleged only that Petitioners arranged for the M/V JALMA TOPIC to be serviced by RadioHolland.[53] Accordingly, Petitioners have failed to sufficiently allege YDK made any representation directly to them. Neither can Petitioners establish element two—that Petitioners relied on the representation made by YDK—because element two necessarily requires the existence of a representation. Because Petitioners have failed to carry their burden as to both the first and second elements necessary to establish implied agency, Petitioners have failed to establish an agency relationship exists between YDK and RadioHolland.

---

[52] R. Doc. 97 at pp. 3-4.
[53] The mere fact that a YDK-certified technician took action in the United States does not, in and of itself, establish personal jurisdiction over YDK. The only cases this Court could identify where a training was held to be a minimum contact were those in which many additional contacts with the forum existed. *See, e.g.*, *TGI Friday's Inc. v. Great Nw. Restaurants, Inc.*, 652 F. Supp. 2d 750, 757-58 (N.D. Tex. 2009) (holding defendants purposefully availed themselves of the forum where they sente representatives to a training on an annual basis, but where they were engaged in eleven franchise agreements with plaintiff, and had extensive contacts outside of the franchise relationship); *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 2008 WL 686206, at *10-11 (S.D. Tex. Mar. 7, 2008) (holding defendants purposefully availed themselves of the forum where eighty percent of defendant's products flowed through the forum, seventy-five products were currently installed in the forum, defendant routinely sent employees to spend extended periods training technicians in the forum, and where defendant had previously submitted to the jurisdiction of a court in the forum).

Having found no agency relationship exists, the contacts of RadioHolland may not be imputed to YDK to establish personal jurisdiction over YDK. This conclusion comports with notions of fair play and substantial justice. To hold RadioHolland to be YDK's implied agent, even in the absence of an allegation that YDK arranged the service call through AG Marine, would be to stretch the boundaries of personal jurisdiction too far.

Petitioners are unable to carry their burden of establishing that their cause of action arises out of or results from YDK's forum-related contacts. Petitioners have failed to demonstrate that the 2016 service call conducted by RadioHolland—the only contact from which Petitioners' assert their failure to warn claim arises—serves as a sufficient contact to establish personal jurisdiction over YDK. Having concluded that Petitioners have failed to make a prima facie case that their cause of action for failure to warn arises out of YDK's forum-related contacts, the Court refrains from addressing the other two elements of the test set out by the Fifth Circuit in *Libersat v. Sundance Energy, Inc*.

## CONCLUSION

**IT IS ORDERED** that Third-Party Defendant YDK Technologies' motion to dismiss for lack of personal jurisdiction is **GRANTED**.[54]

**New Orleans, Louisiana, this 25th day of January, 2023.**

                                                      **SUSIE MORGAN**
                                **UNITED STATES DISTRICT JUDGE**

---

[54] In this Court's October 13, 2022, Order and Reasons granting Petitioners a period of time for jurisdictional discovery, this Court held that Petitioners had failed to make even a preliminary showing of personal jurisdiction as to general personal jurisdiction, and specific personal jurisdiction as to Petitioners' strict products liability claim. R. Doc. 86 at pp. 9-12. Accordingly, having found Petitioners have also failed to make a prima facie showing of specific personal jurisdiction as to their failure to warn claim, dismissal of all of Petitioners' claims against YDK is now warranted.