UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CRESCENT TOWING & SALVAGE CO., INC., ET AL.,**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-1331**<br>     **c/w 21-1390,**<br>     **21-1953, 24-501** |
| **M/V JALMA TOPIC,**<br>    **Defendant** | **SECTION: "E" (2)** |

*Applies to: All cases*

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Limitation Petitioners Lotina Navigation Company and Marfin Management S.A.M. (collectively, "Limitation Petitioners").[1] Claimant Gawain Schouest ("Claimant") opposes Limitation Petitioners' motion.[2] Limitation Petitioners filed a reply in support of their motion.[3]

## BACKGROUND

This case arises from the July 12, 2021, allision (the "Allision") involving the M/V JALMA TOPIC.[4] On that day, the M/V JALMA TOPIC was traveling up the Mississippi River near New Orleans when its rudder stuck to port, causing it to allide with a barge and dock structure owned by Crescent Towing and Salvage Co. Inc. ("Crescent"), along with several small boats owned by Cooper Mooring, Inc. ("Cooper"), situated on the west bank of the river.[5] On July 13, 2021, Crescent and Cooper filed the present action against

---

[1] R. Doc. 166.
[2] R. Doc. 168.
[3] R. Doc. 172.
[4] R. Doc. 62 at p. 3.
[5] *Id.*

1

the M/V JALMA TOPIC *in rem* pursuant to Supplemental Admiralty Rule C arrest.[6] On July 22, 2021, the Limitation Petitioners, which are the owner and managing owner of the M/V JALMA TOPIC, filed a verified complaint in limitation pursuant to Supplemental Admiralty Rule F of the Federal Rules of Civil Procedure (the "Limitation Action").[7] On July 28, 2021, the Court approved the Limitation Petitioners' stipulation for value, directed issuance of notice to claimants, and stayed all actions against the Limitation Petitioners and the M/V JALMA TOPIC arising from the Allision.[8]

On September 8, 2023, all claimants in the Limitation Action settled their claims with the Limitation Petitioners except for Claimant,[9] who at the time of the Allision was employed by Crescent as a port captain.[10] Claimant moved the Court to dissolve the injunction, stay the Limitation Action, and allow him to proceed in state court,[11] subject to certain protective stipulations, which provided he would not seek or enforce any judgment against the Limitation Petitioners exceeding the value of the limitation fund.[12] Finding the stipulations adequately protected the Limitation Petitioners' rights, the Court granted Claimant's motion and allowed him to pursue claims in state court under the "single claimant rule."[13]

On October 6, 2023, Claimant filed a petition in Louisiana state court against Crescent, Cooper, and the Limitation Petitioners (the "Schouest Action").[14] Claimant brought a general maritime negligence claim against Limitation Petitioners for injuries

---

[6] R. Doc. 1.
[7] R. Doc. 1 (*In re Lotina Navigation Co., et al.*, Case No. 21-1390).
[8] R. Doc. 7 (21-1390).
[9] *See* R. Doc. 129.
[10] R. Doc. 27-1 at 2.
[11] R. Doc. 130.
[12] R. Doc. 130-3.
[13] R. Doc. 135. A "single claimant" may proceed in state court. *See Langnes v. Green*, 282 U.S. 531 (1931).
[14] R. Doc. 1-6 at pp. 7-10 (*Schouest v. Lotina Navigation Co., et al.*, Case No. 24-501).

he allegedly suffered while responding to the Allision.[15] After being named as defendants in the Schouest Action, Crescent and Cooper requested permission to lift the stay and amend their claims against the Limitation Petitioners and the limitation fund to include contribution, indemnity, and recovery related to their liability arising from the Schouest Action.[16] On February 7, 2024, the Court reopened the Limitation Action for the limited purpose of allowing Crescent and Cooper to file their amended claims.[17]

Limitation Petitioner Marfin Management S.A.M. noticed removal of the Schouest Action to federal court on February 27, 2024.[18] While proceeding in this Court, Schouest filed a motion to remand the Schouest Action to state court.[19] Subsequently, Claimants Crescent and Cooper filed a motion in the Limitation Action requesting that the Court reopen the Limitation Action, consolidate the Schouest and Limitation Actions, and reinstate the limitation injunction.[20] The Court granted Crescent and Cooper's motion and denied Claimant's motion to remand as moot.[21]

Limitation Petitioners then filed a motion for summary judgment against Claimant seeking dismissal of Claimant's general maritime negligence claim.[22]

## **LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23] "An issue is material if its resolution could affect the outcome of the action."[24]

---

[15] *Id.*
[16] R. Doc. 136.
[17] R. Doc. 152; R. Doc. 153.
[18] R. Doc. 1 (24-501).
[19] R. Doc. 22 (24-501).
[20] R. Doc. 154.
[21] R. Doc. 162.
[22] *Id.*
[23] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[24] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[25] All reasonable inferences are drawn in favor of the nonmoving party.[26] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[27]

If the dispositive issue is one for which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[28] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[29]

On the other hand, if the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[30] When proceeding under the

---

[25] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150-51 (2000).
[26] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[27] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[28] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[29] *Celotex*, 477 U.S. at 322-24.
[30] *Id.* at 331-32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex*, 477 U.S. at 322-24, and requiring the Movers to submit affirmative evidence to negate an essential element of the nonmovant's

first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[31] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[32] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[33] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[34] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[35]

---

claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (5th Cir. 1987) (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

[31] *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).
[32] *Celotex*, 477 U.S. at 332-33.
[33] *Id.*
[34] *Id.* at 332-33 & n.3.
[35] *Id.*; *see also First Nat'l Bank of Ariz.*, 391 U.S. at 289.

Still, "unsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[36]

## LAW AND ANALYSIS

### I. There are genuine disputes of material fact with respect to Claimant's maritime negligence claim.

Claimant brings a maritime negligence claim against Limitation Petitioners.[37] "To establish maritime negligence, 'a plaintiff must demonstrate that there was [1] a duty owed by the defendant to the plaintiff, [2] breach of that duty, [3] injury sustained by the plaintiff, and [4] a causal connection between the defendant's conduct and the plaintiff's injury.'"[38] The fourth element, causation, "has the sub-elements of: (a) cause in fact and (b) proximate or legal cause."[39] Cause in fact, or legal cause, "is something more than 'but for' causation, and the negligence must be a 'substantial factor' in the injury."[40] A court's determination on proximate cause "involves a number of factors, including most notably the foreseeability of the harm suffered by the complaining party."[41] "[I]f the damages claimed to be sustained as a result of the Defendants' alleged negligence were not

---

[36] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (first citing *Celotex*, 477 U.S. at 324; then *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994); then quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).
[37] R. Doc. 1-6 at pp. 7-10 (24-501).
[38] *SCF Waxler Marine, L.L.C. v. Aris T M/V ("Waxler II")*, 24 F.4th 458, 470 (5th Cir. 2022) (quoting *GIC Servs., L.L.C. v. Freightplus USA, Inc.*, 866 F.3d 649, 659 (5th Cir. 2017)).
[39] *Cooper/T. Smith Stevedoring Co., Inc. v. Bright Navigation, Inc.*, No. 17-1216, 2019 WL 13214727, at *8 (E.D. La. Aug. 30, 2019) (internal quotations omitted).
[40] *Donaghey v. Ocean Drilling & Expl. Co.*, 974 F.2d 646, 649 (5th Cir. 1992) (quoting *Thomas v. Express Boat Co.*, 759 F.2d 444, 448 (5th Cir. 1985)).
[41] *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987).

'foreseeable,' then Defendants owed no duty to the Claimants and are not liable as a matter of law."[42]

### A. The disputed and undisputed material facts

The following facts are undisputed: (1) Claimant, an employee for Crescent, was at home at the time of the Allision,[43] (2) Claimant was called to the scene of the Allision after it occurred,[44] (3) Claimant performed work responsive to the Allision,[45] and (4) the hours Claimant worked following the Allision.[46]

The parties dispute (1) whether the office barge was stable on the bank or not when Claimant arrived at the scene of the Allision,[47] (2) the amount of work and the nature of the work Claimant was required to perform in response to the Allision,[48] and (3) when Claimant was injured.[49]

Limitation Petitioners state it is an undisputed fact that when Claimant arrived at the Crescent facility after Crescent called him to the scene of the Allision, the office barge was pushed into the levee's mud and was stuck.[50] Claimant disputes this and points to his deposition testimony.[51] Claimant testified that, upon arrival at the scene of the Allision, "[t]here was no time" to wait for help because there was "nothing to hold" the barge in place and that "[s]omething ha[d] to be done.[52]

---

[42] *In re Oil Spill*, MDL No. 2179, 2011 WL 4829905, at *3 (E.D. La. Oct. 12, 2011).
[43] R. Doc. 166-2 at ¶¶ 1-5; R. Doc. 168-1 at pp. 1-2.
[44] R. Doc. 166-2 at ¶ 5; R. Doc. 168-1 at pp. 2-4.
[45] R. Doc. 166-2 at ¶¶ 12, 14-16; R. Doc. 168-1 at pp. 7, 9.
[46] R. Doc. 166-2 at ¶¶ 1-5; R. Doc. 168-1 at pp. 1-2.
[47] R. Doc. 166-2 at ¶¶ 6, 8-10, 13; R. Doc. 168-1 at pp. 4-6, 8.
[48] R. Doc. 166-2 at ¶¶ 11-12, 17; R. Doc. 168-1 at pp. 6-9.
[49] R. Doc. 166-2 at ¶ 18; R. Doc. 168-1 at pp. 7, 9-10.
[50] R. Doc. 166-2 at ¶ 6 (citing R. Doc. 166-3 at pp. 9-11 (Claimant Deposition)).
[51] R. Doc. 168-1 at pp. 4-5 (citing R. Doc. 168-2 at pp. 22-26, 31-33 (Claimant Deposition)).
[52] R. Doc. 168-2 at pp. 31, 32-33.

Limitation Petitioners state it is an undisputed fact that Claimant unrolled "large" mooring lines in the parking lot, carried these lines down the batture, and put them up on the barge with the help of another Crescent Towing employee.[53] Claimant contests this.[54] Claimant testified that there were three Kevlar mooring lines on spools in storage in Crescent Towing's parking lot.[55] Claimant then testified that he rolled the stools into the parking lot and then unrolled lines.[56] Claimant testified that, after another Crescent employee, Jarod, arrived at the scene of the Allision, Claimant and Jarod carried the three lines down the levee, put them around a column, and threw a monkey fist onto the barge to pull the lines onto the barge.[57] Claimant testified that he and Jarod carried each line in sections one at a time and carried each "bite" as far as they could before stopping.[58] Then, Claimant testified they would grab the next bite of line and carry that bite as far as they could.[59] Claimant testified they repeated this process for each mooring line.[60] Although the parties dispute the amount of work and the nature of the work Claimant was required to perform in response to the Allision, the parties do not explain the relevance of this dispute to Limitation Petitioners' motion for summary judgment. Nor does the Court find these factual disputes relevant.

Limitation Petitioners state it is an undisputed fact that Claimant told Crescent he was hurting at the end of July 13, 2021 and that Claimant did not go to a doctor until "several" weeks later.[61] Claimant contests this fact.[62] Claimant testified that he first told

---

[53] R. Doc. 166-2 at ¶ 11 (citing R. Doc. 166-3 at pp. 12-17).
[54] R. Doc. 168-1 at pp. 6-7 (citing R. Doc. 168-2 at pp. 10-14).
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.*
[61] R. Doc. 166-2 at ¶ 18 (citing R. Doc. 166-3 at p. 30).
[62] R. Doc. 168-1 at p. 10 (citing R. Doc. 168-2 at pp. 29-30).

Crescent Towing about his injury on July 12, 2021.[63] This factual dispute is material because it is relevant to when Claimant suffered his injury and whether Claimant suffered his injury while performing work in response to the Allision.

### B. Analysis

Limitation Petitioners move the Court to grant summary judgment against Claimant and dismiss Claimant's maritime negligence claim.[64] As the United States Court of Appeal for the Fifth Circuit has explained:

> Because of the peculiarly elusive nature of the term "negligence" and the necessity that the trier of facts pass upon the reasonableness of the conduct in all the circumstances in determining whether it constitutes negligence, it is the rare personal injury case which can be disposed of by summary judgment, even where the historical facts are concededly undisputed.[65]

Thus, a court will grant summary judgment in a negligence case only in "rare circumstances."[66]

Limitation Petitioners ask the Court to dismiss Claimant's maritime negligence claim because Claimant cannot establish the duty and causation elements as a matter of law.[67] A court should "decide the issue of causation on summary judgment [only] if the allegation is so frivolous and obviously impossible as to fall short of presenting a genuine issue of material fact."[68] Based on the record, the Court finds a reasonable factfinder could

---

[63] R. Doc. 168-2 at pp. 28-30.
[64] R. Doc. 166.
[65] *Gauk v. Meleski*, 346 F.2d 433, 437 (5th Cir. 1965).
[66] *Davidson v. Stanadyne, Inc.*, 718 F.2d 1334, 1339 & n.8 (5th Cir. 1983) ("In tort actions in which determinations of a less 'elusive nature,' such as the existence of an agency relationship, waiver, or whether a plaintiff is in a class protected by a statute, are dispositive, summary judgment may more often be appropriate." (citing 10A Wright, § 2729 at 197–201)); *see also Keating v. Jones Dev. of Mo., Inc.*, 398 F.2d 1011, 1015 (5th Cir. 1968) ("Negligence is a seldom enclave for trial judge finality. Negligence is a composite of the experiences of the average man and is thus usually confined to jury evaluation.").
[67] R. Doc. 168-1.
[68] *Tidewater Marine, Inc. v. Sanco Intern., Inc.*, No. 96-1258, 1997 WL 543108, at *5 (E.D. La. Sept. 3, 1997) (first quoting *Del Valle v. Marine Transp. Lines, Inc.*, 582 F. Supp. 573, 578 (D.P.R. 1984); then citing *Bonmarito v. Pendrod Drilling Corp.*, 929 F.2d 186, 188 (5th Cir. 1991)).

find that Limitation Petitioner's alleged negligence caused Claimant's injuries because Claimant was injured while performing work that the Allision necessitated.

Claimant has established a genuine dispute of material fact as to the stability of the office barge when Claimant arrived at the scene of the Allision. This factual dispute regarding whether the office barge needed to be secured immediately shows why summary judgment is inappropriate. Whether Claimant was presented with an emergency when he arrived at the scene of the Allision impacts the foreseeability analysis and therefore the causation and duty analyses. The foreseeability of Claimant's injuries depends on whether Claimant was injured while responding to an emergency that Limitation Petitioners caused through their negligence.

Limitation Petitioners ask the Court to find that Limitation Petitioners did not proximately cause Claimant's injuries as a matter of law based primarily on three cases.[69] Each case is distinguishable.[70] None of Limitation Petitioners' cited cases addresses a situation in which an individual who was not present at the time of the allision was injured while performing work in response to the allision.[71]

*SCF Waxler Marine LLC v. M/V ARIS T* and *Cooper/T. Smith Stevedoring Co., Inc. v. Bright Navigation, Inc.* involve decisions issued following a bench trial and presentation of evidence, not summary judgment orders.[72] *Waxler* is distinguishable because, in *Waxler*, "[t]he cause-in-fact and proximate cause of [the injured party's] injuries was his own carelessness or inattention" and it was not foreseeable that the

---

[69] R. Doc. 166-1 at pp. 8-16.
[70] *SCF Waxler Marine LLC v. M/V ARIS T ("Waxler I")*, 427 F. Supp. 3d 728 (E.D. La. 2019), *aff'd sub nom. Waxler II*, 24 F.4th 458; *Hardimon v. SCF Lewis & Clark Fleeting LLC*, 614 F. Supp. 3d 632 (S.D. Ill. 2022); *Bright Navigation*, 2019 WL 13214727 (E.D. La. Aug. 30, 2019).
[71] *Waxler I*, 427 F. Supp. 3d 728; *Waxler II*, 24 F.4th 458; *Hardimon*, 614 F. Supp. 3d 632; *Bright Navigation*, 2019 WL 13214727.
[72] *Waxler I*, 427 F. Supp. 3d 728; *Waxler II*, 24 F.4th 458; *Bright Navigation*, 2019 WL 13214727.

allision "would have caused [the injured party], who did not hear or see the allision, to panic and injure himself on a dock that was not hit, and was never in danger of being hit, by the Aris T."[73] In this case, however, it was not Claimant's "carelessness or inattention" that caused his injuries. Instead, it was Claimant's efforts in response to the Allision. *Waxler* is further distinguishable because, in *Waxler*, the injured party was not performing work related to the allision. In *Waxler*, the injured party merely saw a ship 1,000 feet away and tripped and fell.[74]

*Bright Navigation* also is distinguishable. In *Bright Navigation*, the plaintiff argued the owner of the AGAPI S, which was involved in an allision, caused barges in the plaintiff's fleet to break loose.[75] One of the plaintiff's theories was that ships responding to the AGAPI S allision caused water turbulence and that this turbulence caused its barge to break loose.[76] Because the owner of the AGAPI S did not control the vessels responding to the allision and because there was no ongoing emergency when the vessels responded to the allision, the plaintiff "failed to prove" the AGAPI S's owner caused the barge breakaway.[77] The factual dispute regarding whether the office barge in this case was stable and/or secure, and whether there was an emergency at the time Claimant arrived at the scene of the Allision, distinguishes this case from *Bright Navigation*.

*Hardimon v. SCF Lewis & Clark Fleeting LLC* was decided on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. It is non-binding precedent from the United States District Court for the Southern District of Illinois and is distinguishable.[78] In *Hardimon*, the plaintiff alleged that he was injured after he boarded a barge damaged by

---

[73] *Waxler I*, 427 F. Supp. 3d at 784-85.
[74] *Id.*
[75] *Bright Navigation*, 2019 WL 13214727, at *12, 18-19.
[76] *Id.*
[77] *Id.* at *18-19.
[78] *Hardimon*, 614 F. Supp. 3d 632.

11

barges that broke away from an American River Transportation Company, LLC ("ARTCO") fleet.[79] The plaintiff failed "to allege that he was assigned to the barge . . . for the purpose of repairing damage."[80] Moreover, from the plaintiff's allegations, it did "not appear that [his] injuries had any relation to any damage created by the ARTCO barge."[81] In this case, Claimant was called to the scene of the Allision in response to the Allision and performed work related to the Allision.[82] This is not a case in which Claimant was present because of the Allision but just so happened to suffer an injury. Claimant argues he was injured performing work that the Allision necessitated.[83]

Given the lack of on point legal authority and the factual disputes regarding the stability of the barge when Claimant arrived and when Claimant suffered his injury, summary judgment is not appropriate.

## CONCLUSION

**IT IS ORDERED** that Limitation Petitioners' motion for summary judgment is **DENIED.**[84]

New Orleans, Louisiana, this 3rd day of January, 2025.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[79] *Id.* at 633-34.
[80] *Id.* at 638.
[81] *Id.*
[82] R. Doc. 166-2 at ¶¶ 5, 12, 14-16; R. Doc. 168-1 at pp. 2-4, 7-9.
[83] R. Doc. 168.
[84] R. Doc. 166.